**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CUESTA PARTNERS LLC,<br><br>    Plaintiff,<br><br>    -against-<br><br>JAMIE REINGRUBER, LEO BERWICK LP, and<br>LEO BERWICK AI, LP,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff, Cuesta Partners LLC ("Plaintiff" or "Cuesta"), by and through its undersigned attorneys, as and for its Complaint against Defendants Jamie Reingruber ("Reingruber"), Leo Berwick LP ("Leo Berwick"), Leo Berwic AI, LP ("LB AI") (collectively, "Defendants"), hereby allege as follows:

**NATURE OF THE ACTION**

1.      For nearly six years, Reingruber progressed up to Principal and Co-lead of Technology Strategy Practice at Cuesta. In that role, he reported directly to Cuesta's co-founding partner, oversaw responsibility for project completion for Cuesta's largest client accounts, and was deeply involved with all of them. In the last few years of his tenure, Reingruber was actively involved in the development and implementation of Cuesta's strategy and business development. For the year 2025, in exchange for acceptance of duties to maintain confidential information and certain post-employment non-solicit restrictions, Reingruber received over $300,000 in compensation.

2.      However, and despite the position and access with which Cuesta entrusted him, in the final days of his employment, Reingruber orchestrated an extensive exfiltration of Cuesta's confidential information and trade secrets. Behind Reingruber's misconduct is his new employer,

Leo Berwick AI and its corporate parent or affiliate, Leo Berwick, L.P, which induced Reingruber's breach and participated in his misappropriation of trade secrets in order to shortcut building a competing business with Cuesta.

3.    Reingruber remains in possession of a laptop issued to him by Cuesta during and for his employment, which contains copies of these files.  He has failed and refused to return the laptop to Cuesta and refuses to return it despite proper demand and the requirements of his written agreement.

4.    Cuesta brings this action to stop the ongoing, irreparable harm caused by Defendants' wrongful retention of Cuesta's trade secrets and other confidential information, Reingruber's breaches of enforceable restrictive covenants, and Leo Berwick and Leo Berwick AI's inducement of those breaches. But for this suit, and the injunctive relief that Cuesta seeks therein, Defendants' misconduct threatens to devastate Cuesta's relationship with its clients, the loss of its senior level employees, and cost it unascertainable damages, and expose it to liability arising from its own contractual obligations to its clients and business partners.

5.    As of this filing, Defendants are still in possession of Cuesta's confidential information, and the risk of irreparable harm from their unfair competition remains unabated. Absent appropriate judicial intervention, Defendants will continue to build a business at Leo Berwick AI through his unlawful retention and use of the confidential information and trade secrets that Cuesta spent significant resources to develop over the past several years.

## PARTIES

6.    Cuesta is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Illinois.

7.    Jamie Reingruber is an individual residing within the State of New York.

2

8.      Leo Berwick is a limited partnership organized and existing under the laws of the State of Delaware, with a principal place of business in New York.

9.      Leo Berwick holds itself out as an M&A advisory firm.

10.     Leo Berwick recently launched Leo Berwick AI, an entity which provides services to Leo Berwick. Leo Berwick AI is a direct competitor with Cuesta, provides identical services and target the same industries.

11.     Leo Berwick AI is a limited partnership organized and existing under the laws of the State of Delaware, with a place of business in New York.

## JURISDICTION AND VENUE

12.     This Court has federal question subject matter jurisdiction over the pending matter pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1337.

13.     Venue is properly laid in this Court pursuant to 28 U.S.C. §1391(b)(1) because Defendant Reingruber resides in this District.

## FACTUAL ALLEGATIONS

### *Reingruber's Terms of Employment With Cuesta*

14.     Cuesta is a data, AI and IT diligence firm. Cuesta works with private equity and corporate clients on data strategy and advanced analytics, AI strategy and execution, M&A advisory and technology due diligence, technology strategy and delivery, and transformation support.

15.     Reingruber began employment with Cuesta in 2020 as one of its first employees and rose to the level of Principal and Co-lead of Technology Strategy Practice.

16.    Cuesta issued Reingruber a device to use exclusively for work related to his employment with Cuesta. This included a MacBookPro laptop, which was issued to Reingruber during his employment and for use during his employment (the "Company laptop").

17.    To safeguard its confidential and trade secret information from being used for any unauthorized purpose – and to protect its substantial investment in its employees – Cuesta requires its employees to agree to confidentiality, non-disclosure, and non-solicitation restrictions.

18.    As a condition of his employment by Cuesta, Reingruber executed the Employee Confidentiality, Non-Compete and Non-Solicitation Agreement (the "Agreement") and signed the Agreement with an effective date of August 6, 2021.

19.    In Paragraph 1.2 of the Agreement, Reingruber agreed that:

> [He will] during and after the term of this Agreement (i) hold in confidence for the benefit of the Company and to not disclose, use, copy, reproduce, publish, summarize, make available to any third party, or remove from the premises of the Company (collectively, "Disclosure") any Confidential Information, in any form, without the prior written consent of the Company; (ii) take all reasonable measures to prevent such Disclosure or misuse of the Confidential Information; (iii) not use the Confidential Information, except in the performance of a employment with the Company or any of its Affiliates.
>
> Upon request of the Company at any time during the term of this Agreement, or upon termination of this Agreement for any reason, including expiration of the term, [Mr. Reingruber] agrees to cease using and to return to the Company all whole and partial copies and derivatives of the Confidential Information in [his] possession or under [his] direct or indirect control, whether complete or in progress.

20.    Confidential Information is defined in Section 1.1 of the Agreement to include:

> lists of names or classes of customers or personnel, lists of and information related to directors, officers, employees, consultants, contractors, business partners, suppliers or manufacturing entities, inventions, innovations, improvements, research or development activities and plans, test results, product and prototype

specifications, disclosures, processes, systems, methods, formulae, devices, patents, patent applications, trademarks, intellectual property, instruments, materials, products, patterns, compilations, programs, techniques, sequences, designs, specifications, computer programs, source codes, software and hardware architecture and "road maps," mask works, costs of production, volume of sales, promotional methods, marketing plans, business plans, business opportunities, strategies, forecasts, prices or other financial data, financial statements, budgets, projections, representative agreements, licenses, sub-licenses, agreements, and any and all reports, summaries and other findings concerning sales, marketing, development and operational techniques (including the teaching thereof), marketing and purchasing formulae, development of product designs, pre-manufacturing product designs, formats, financial data, trade secrets, proprietary and confidential information about Company or Affiliate investments and business partners or affiliates, business plans or strategies, and any and all other confidential or proprietary information and data belonging to or relating to the affairs of the Company and its Affiliates that should reasonably have been understood to be proprietary and confidential, either because of legends or other markings, the circumstances of disclosure or the nature of the information or data, itself, and whether disclosed directly or indirectly, or orally, visually or in writing. Confidential Information includes not only information that has been disclosed to Employee or to which Employee had access in the course of employment, but also information that Employee developed or learned during the course of employment with the Company.

21. In Section 6 of the Agreement, Mr. Reingruber agreed to a non-solicitation provision, which states the following:

During [his] employment with the Company and for a period of twelve (12) months after the termination of [his] employment with the Company for any reason, [he] will not, without the express, prior written consent of the Company, whether personally or through others, directly or indirectly: (a) disrupt, damage, impair or interfere with the business of the Company by soliciting any employee, consultant, officer or director of the Company or any of its subsidiaries for employment, consulting or other services elsewhere...

22. Mr. Reingruber also agreed to a return-of-property provision in Section 8 of the Agreement that provides:

> Upon termination of Employee's employment with the Company for any reason, Employee shall return to the Company all Company property including originals and copies of Company-issued keys, computers, devices, business documents correspondence, computer software, printouts, advertisements, brochures, equipment, manuals, notebooks, and any other tangible property, Confidential Information and other records and documents relating to the Company and its business, and shall not procure, photocopy or copy any such Company property after notification of, or in anticipation of, termination of employment.

***Reingruber's Senior Role at Cuesta and Access to Its Confidential Files***

23. As Principal and Co-lead of Technology Strategy Practice, Reingruber was responsible for the full-cycle of projects up through and including closing and interim deliverables.

24. By virtue of his seniority within Cuesta, Reingruber had access to, and regularly worked with, nearly all of Cuesta's competitively sensitive confidential information and trade secrets. He was deeply involved with the creation and development of Cuesta's templates for its deliverables, which contained nuanced formulas and algorithms curated and developed over many years.

25. Reingruber also had access to all of Cuesta's most critical corporate trade secrets, including customer-specific proposal and pricing information, financial and other business information associated with clients and prospective clients, and detailed business relationship and development strategy.

26. In addition, as part of his responsibilities to oversee client projects, Reingruber routinely worked with client files. These contained extensive confidential information, including each client's due diligence files and Cuesta's work product procured for the respective client. Among these files and documents were client relationship maps, developed by Cuesta, with key

6

information on each client's leadership and planned strategy and deliverables, sales strategies, and native files with Cuesta's IP to streamline work demands.

27.    Reingruber also had access to Cuesta's Salesforce database which contained the company's client lists and contact information.

28.    For 2025, Reingruber's total compensation consisted of salary in the amount of $225,000 and a bonus of $64,174

### *Cuesta's Efforts to Protect Their Trade Secrets and Confidential Information*

29.    Cuesta has invested considerable time, expense, and resources in its business and employees, including Reingruber during his employment, so that its employees can perform their work for Cuesta competently and successfully.

30.    Cuesta maintains trade secrets that are valuable, confidential, and proprietary to Cuesta, and that are not generally known in the public domain.

31.    Through their work, Cuesta employees, including Reingruber, gain detailed and intimate knowledge of Cuesta's trade secrets and other confidential information.

32.    Cuesta's trade secrets, confidential information, and business relationships have significant economic value to it. Cuesta has a legitimate business interest in keeping such information confidential and not allowing these trade secrets and other confidential information to be disclosed to its competitors through any improper means.

33.    Cuesta's trade secrets and confidential information would be of significant economic value to its competitors.

34.    Consequently, Cuesta takes the protection of its information very seriously and expends a considerable amount of time and money to keep its information secure. At all relevant times, Cuesta has taken extensive and reasonable steps to protect the confidentiality of its trade secrets and other confidential information, including:

a. requiring that all employees agree to confidentiality and non-disclosure provisions, such as those in Reingruber's Agreement.

b. maintaining customer and personnel information on password-protected computer systems accessible only by employees of Plaintiff or its affiliates.

c. Requiring that all client files be stored on Microsoft Sharepoint and not locally

d. Maintaining Microsoft Intune on all company laptops enabling the company to lock laptops remotely.

e. Providing access to client, personnel, and sales data on an individual need-to-know basis.

f. Transmitting PDF files to non-Cuesta employees to preserve key formulas and IP embedded in native files.

***Leo Berwick Plans to Launch Leo Berwick AI and Recruits Reingruber***

35. Upon information and belief, Leo Berwick has attempted, and failed, to acquire businesses that perform the very services Cuesta does.

36. In September 2025, it approached Cuesta about acquiring Cuesta, an overture that Cuesta rejected.

37. Upon information and belief, in lieu of continuing its efforts to acquire such a business, and having been turned away by Cuesta, Leo Berwick decided to launch its own entity, Leo Berwick AI.

38. Upon information and belief, Leo Berwick AI was incorporated on or about February 6, 2026.

39. Upon information and belief, Leo Berwick AI plans to replicate Cuesta's business model and solicit its employees, including Reingruber, in order to launch operations in direct

8

competition with Cuesta with the advantage of having access to and using Cuesta's confidential information.

40. In furtherance of this goal, Defendants solicited Cuesta employees, including Reingruber and at least one other Prinicpal, to join Leo Berwick AI. This group lift-out would leave Cuesta understaffed and threaten its business through a major territorial market.

41. As part of these efforts, Leo Berwick and/or Leo Berwick AI began recruiting Reingruber for Leo Berwick AI.  In early 2026. Leo Berwick or Leo Berwick AI conveyed to Reingruber a formal offer of employment, which he accepted.

42. Upon information and belief, Leo Berwick predicated its offer to Reingruber on his launching or significantly contributing to its operations, which would be executed by use of Cuesta's confidential information.

43. Reingruber disclosed to Cuesta on March 13, 2026 that he was considering leaving, advised Cuesta on March 17, 2026 that he was considering joining Leo Berwick, and conveyed his resignation to Cuesta on March 18, 2026.

44. On Reingruber's last day of employment, March 19, 2026, Cuesta provided Reingruber with a prepaid FedEx label with directions to return his Company laptop.

*Reingruber has to date failed and refused to return the Company laptop.*
*Reingruber's Unsanctioned and Massive Downloading of Cuesta's Files.*

45. In anticipation of his departure to Cuesta's competitor, Reingruber began downloading a magnitude of Cuesta's confidential information and trade secrets.

46. The number of downloads performed was exponentially higher than was performed by Reingruber previously or by other Principals of Cuesta.  Between November 6, 2025 and February 2026, he downloaded approximately 1,314 files.

9

47.     By contrast, on just one day, March 8, 2026, Reingruber downloaded a remarkable 24,000 files.  Over the weekend of March 7-8, 2026, Reingruber downloaded slightly more than 34,500 files, a level of activity which was completely inconsistent with his legitimate job needs.

48.     Among the total of approximately 40,562 files that he downloaded between March 2 and March 19, 2026, Reingruber planned to and did in fact steal nearly *all of Cuesta's complete client files*.

49.     By way of example only, Reingruber downloaded multiple files regarding clients for which he had never worked or clients for which he was not currently engaged on any projects.

50.     The materials that Reingruber downloaded include, among other things, financial statements, bank statements, payroll registers, tax returns, employment agreements, incentive and commission plans, employee reviews, video recordings, non-compete and non-disclosure agreements and corporation formation documents.  Much of this material was provided to Cuesta by its clients in connection with specific projects including due diligence matters, suggesting that Reingruber's downloading constituted a generalized "sweep" of files and records.

51.     The sensitive and confidential data comprising the client files constitutes stolen by Reingruber constitutes Cuesta's trade secret material. The data was compiled through great effort over time, and derives value from its secrecy and was entrusted to Cuesta by its clients with an expectation of privacy and confidentiality. Were a competitor like Leo Berwick AI to take possession of this data, it could be used by that competitor to severely undercut Cuesta in the marketplace.

52.     For example, native file templates for Cuesta's deliverables maintain formulas developed over several years. This data is especially valuable as it provides a short cut to outputs in work product.

53.     In addition, due diligence files and privileged client information provide insight into customers' individual price tolerance.

54.     Moreover, the inclusion of client relationship maps among the files stolen by Reingruber suggests that Defendants intend to use that information to solicit Cuesta's customers.

55.     On information and belief, Reingruber plans to utilize these files to launch Leo Berwick AI's operations quickly and without spending time or effort to develop its own materials in the normal course.

56.     The circumstances of this case presents the very dangers that the Agreement's covenants and the DTSA are intended to protect against. Armed with Cuesta's detailed, up-to-date, IP formulas and client data, Reingruber will be able to assist Leo Berwick AI in undercutting Cuesta's strategic initiatives in the market – beating it to the punch at millions of dollars in cost savings. Leo Berwick AI's targeted hires of Cuesta's veterans heightens these synergies, to Cuesta's irreparable detriment.

57.     Upon information and belief, Defendants have solicited employees at Cuesta and have tendered offers of employment to an unknown number of its employees.

58.     At least one senior data resource who performed work for Cuesta in the past several months is currently employed at Leo Berwick AI as a Data Integration Specialist. This followed after Reingruber solicited terms of hiring information from a different Cuesta Senior Manager.

***Cuesta Puts Defendants on Notice of Its Claims***

59.     On March 24, 2026, counsel for Cuesta sent Reingruber and Leo Berwick a letter placing it on notice of the terms of Reingruber's Agreement, asking that Reingruber comply with his obligations thereunder, and that Leo Berwick and Leo Berwick AI not tortiously interfere with Cuesta's contractual rights. Cuesta also requested assurances related to Reingruber's downloading

11

of Cuesta's confidential information and solicitation of employees to Leo Berwick or Leo Berwick AI.

60.    On March 24, 2026, counsel for Leo Berwick responded by letter to Cuesta's counsel, advising that Reingruber was planned to start at Leo Berwick AI, an entity which provides services to Leo Berwick, falsely claiming that Reingruber's new position does not overlap with the nature of work that Cuesta does. More importantly, Leo Berwick did not address the assurances Cuesta sought. Notably, Leo Berwick did not deny that Reingruber solicited Cuesta's employees to Leo Berwick and Leo Berwick AI, disclosed and transmitted Cuesta's confidential information to them, or that they had an involvement in inducing him to do so.

61.    The stolen data regarding Cuesta could be used for the benefit of Leo Berwick and Leo Berwick AI- and to Cuesta's detriment - regardless of which entity actually employs Reingruber.

62.    On March 25, 2026, counsel for Reingruber responded by letter to Cuesta's counsel, in part, denying enforceability of Reingruber's Agreement, but did not contest the non-solicitation, confidentiality obligations, nor the return of property provision.

63.    In acknowledging Reingruber's downloading Cuesta's confidential files in the days leading to his employment, Reingruber's counsel asserted that "there was nothing nefarious about an employee downloading files he needs to perform his job." Reingruber was silent on whether the confidential information he improperly downloaded was disseminated to Leo Berwick or Leo Berwick AI.

64.    Additionally, counsel stated that Reingruber is "willing" to return the Company laptop only *after* the laptop was unlocked and Reingruber able to remove his personal information.

65.     On April 4, 2026, counsel responded to Defendants and restated their prior assurances related to Reingruber and Leo Berwick. Cuesta again requested that Reingruber's Company laptop be returned as required by his contract and advised that it would work in conjunction with Reingruber to ensure all of his personal files were removed from the Company laptop upon receipt.

66.     Notwithstanding the foregoing request, Reingruber has failed and refused to return the Company laptop.

## AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Contract – Against Reingruber

67.     Cuesta repeats and re-alleges each and every allegation stated in the preceding paragraphs of the Complaint as if fully set forth herein.

68.     Under Section 1.2 of the Agreement, Reingruber was obligated to hold Cuesta's confidential information in confidence for the benefit of the Cuesta and to not disclose or use the confidential information for any other purpose or entity.

69.     Reingruber breached Section 1.2 of the Agreement by, at minimum, downloading 46,000 of Cuesta's files, including complete client files, in anticipation of his departure from Cuesta.

70.     Under Section 5 of the Agreement, Reingruber agreed that for a period of twelve (12) months after the termination of his employment, he would not solicit Cuesta's customers.

71.     Under Section 6 of the Agreement, Reingruber agreed that for a period of twelve (12) months after the termination of his employment, that he would not solicit Cuesta's employees.

72.     Upon information and belief, Reingruber has, at a minimum, breached Section 6 of the Agreement by soliciting other principals at Cuesta to Leo Berwick and Leo Berwick AI.

73.     Cuesta has a legitimate business interest in enforcing the non-solicitation and non-competition provisions of the Agreement because, inter alia, Reingruber possesses confidential information regarding Plaintiff's business - including Plaintiff's client contact information and pricing strategy - that Defendants can use to undermine Plaintiff's business strategy and customer relationships. Plaintiff also has a legitimate business interest in protecting its customer and brand goodwill, which will suffer harm as a result of Reingruber's breach of Sections 1.1, 1.2, and 6 of the Agreement.

74.     The enforcement sought by Plaintiff does not pose an undue hardship on Reingruber.

75.     Under Section 8 of the Agreement, Reingruber agreed to return all Cuesta property in his possession after notification of, or in anticipation of, termination of employment.

76.     Reingruber breached Section 8 by failing to return, upon request or upon the conclusion of his employment, the Company-issued laptop, onto which he had saved Plaintiff's confidential information, or the over 40,000 files that he downloaded from Cuesta's Microsoft Sharepoint.

77.     Cuesta has fully performed its obligations under the Agreement.

78.     As a direct and proximate result of Reingruber's breach of Sections 1.1, 1.2, 6, and 8 of the Agreement, Cuesta has suffered and will continue to suffer irreparable harm, loss of good will, harm to its business, and other injury for which there is no adequate remedy at law.

79.     Cuesta will continue to suffer this harm as a direct and proximate result of Reingruber's misconduct, unless and until Reingruber is restrained from his conduct by preliminary and permanent injunctive relief, and compelled to abide by Sections 1.1, 1.2, 6, and 8 of the Agreement.

80. As a direct and proximate result of Reingruber's breach of the Agreement, Plaintiff has suffered and will continue to suffer additional damages, which will continue to accrue in the form of lost business and other damages in an amount to be proved at trial.

81. By breach of his contractual obligations to Cuesta, as set forth above, Reingruber has forfeited his entitlement to post-employment payments which had been owed to him pursuant to a Transaction Bonus Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Tortious Interference with Contract – Against Leo Berwick and Leo Berwick AI)**

82. Plaintiff repeats and re-alleges each and every allegation stated in the preceding paragraphs of the Complaint as if fully set forth herein.

83. The Agreement signed by Reingruber is valid and enforceable.

84. Upon information and belief, Leo Berwick L.P. is a direct or indirect owner of Leo Berwick AI and fully aware of and a participant in its hiring of Reingruber and his actions in connection with the records of Cuesta.

85. Upon information and belief, at or shortly after the time that Leo Berwick and/or Leo Berwick AI hired Reingruber, Leo Berwick and Leo Berwick AI were aware or were made aware that Reingruber had executed the Agreement, and thus became aware of the terms of the Agreement.

86. On March 25, 2026, Plaintiff provided Leo Berwick and Leo Berwick AI with direct notice of the terms of the Agreement.

87. Upon information and belief, Leo Berwick and Leo Berwick AI intentionally induced Reingruber to violate Section 5 of the Agreement through his solicitation or anticipated solicitation of Plaintiff's employees.

15

88.    Upon information and belief, Leo Berwick and Leo Berwick AI intentionally induced Reingruber to violate Section 1.2 of the Agreement through his theft and improper retention of Plaintiff's confidential information.

89.    Upon information and belief, Leo Berwick and Leo Berwick AI have benefited from Reingruber's misconduct as set forth above by their retention and/or use of Cuesta's confidential information improperly misappropriated by Reingruber.

90.    Leo Berwick and Leo Berwick AI acted without justification or privilege in inducing Reingruber to breach his contractual obligations under the Agreement or accepting the benefits of his misconduct.

91.    As a direct and proximate result of Leo Berwick's and Leo Berwick AI's intentional inducement, Cuesta has suffered and continue to suffer damage, which will continue to accrue in an amount to be proved at trial, absent preliminary and permanent injunctions.

<u>**AS AND FOR A THIRD CAUSE OF ACTION**</u>
**(Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 et seq.)**

92.    Plaintiff repeats and re-alleges each and every allegation stated in the preceding paragraphs of the Complaint as if fully set forth herein.

93.    The documents stolen by Reingruber and the laptop which he continues to refuse to return despite due demand constitute trade secrets within the meaning of the DTSA because:

    a.    Such information is not known outside Cuesta and is known within Cuesta's business only on a need-to-know basis.

    b.    Cuesta takes reasonable measures to protect the secrecy of this information. This information is highly valuable and derives its value from being secret. Cuesta expends considerable effort and expense to generate this information.

    c.    This information is very difficult – if not impossible – for others to properly acquire or duplicate without Cuesta's authorization, and is not readily ascertainable.

d.      This information would be highly valuable to Cuesta's competitors, including Leo Berwick AI.

94.     Reingruber used improper means to misappropriate this information and equipment in that, *inter alia*, he downloaded materials from Cuesta's document management system to his hard drive(s) in the final days of his employment – in violation of company policy – without any legitimate business reason for doing so.

95.     On information and belief, Reingruber misappropriated Cuesta's trade secrets so that he could further copy them and use them in his role at Leo Berwick AI.

96.     On information and belief, Reingruber has used or will continue to use such information to Cuesta's detriment.

97.     Upon information and belief, Leo Berwick L.P. and Leo Berwick AI will use and benefit from the material that Reingruber misappropriated from Cuesta.

98.     Cuesta has suffered irreparable harm as a result of such conduct, will continue to suffer irreparable harm in the absence of an injunction, and has no adequate remedy at law without an injunction.

99.     As a direct and proximate result of Reingruber's conduct, Reingruber is entitled to actual damages in an amount to be determined at trial. Reingruber's acts and conduct were willful and malicious, justifying an award of exemplary damages and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.      damages in an amount to be determined at trial, together with Cuesta's costs and legal fees;

b.      declaring that Cuesta is not obligated to make any post-employment payments to Reingruber;

17

c.  enjoining Defendants, as well as any third party to which Defendant disclosed Plaintiff's confidential information or trade secrets from using or disclosing same;

d.  ordering Defendant to submit his personal computing devices (including cellular phones), email or cloud-storage accounts, and external media storage devices in his custody, possession, or control (including any such devices or accounts used by him or his household members personally) for independent forensic inspection and remediation to purge any copies of Plaintiff's confidential information or trade secrets found thereon;

e.  Awarding Cuesta compensatory damages, in an amount to be determined at trial, plus interest;

f.  Awarding Cuesta Punitive or exemplary damages pursuant to 18 U.S. Code § 1836 and New York common law, plus interest;

g.  Awarding Cuesta reasonable attorneys' fees and costs pursuant to 18 U.S. Code § 1836;

h.  Awarding Cuesta such other and further relief, legal and equitable, that this Court deems just and proper.

Dated: April 30, 2026
New York, New York

**LITTLER MENDELSON, P.C.**

By: */s/ Eric A. Savage*

Eric A. Savage
Sara Elgndy
900 Third Avenue
New York, New York 10022.3298
esavage@littler.com
selgndy@littler.com
Telephone:       212.583.9600
Facsimile:       212.832.2719

*Attorneys for Plaintiff*