Q51LCueC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CUESTA PARTNERS LLC,

                Plaintiff,

           v.                          26 Civ. 3602 (DLC)

JAMIE REINGRUBER, LEO BERWICK
LP, and LEO BERWICK AI, LP,

                Defendants.
                                       Conference
------------------------------x
                                       New York, N.Y.
                                       May 1, 2026
                                       4:00 p.m.

Before:

                    HON. DENISE COTE,

                                       District Judge

                       APPEARANCES

LITTLER MENDELSON, P.C.
     Attorneys for Plaintiff
BY:  ERIC SAVAGE

NIXON PEABODY LLP
     Attorneys for Defendant Reingruber
BY:  MATTHEW FORZANO

NORTON ROSE FULBRIGHT US LLP
     Attorneys for Berwick Defendants
BY:  ANTHONY LAURIELLO

Q51LCueC

(Case called)

MR. SAVAGE:  Good afternoon.  If it please the Court, Eric Savage of Littler Mendelson on behalf of the plaintiff.

MR. FORZANO:  Good afternoon, your Honor.  Matthew Forzano from Nixon Peabody for defendant Jamie Reingruber.

MR. LAURIELLO:  Anthony Lauriello of Norton Rose Fulbright on behalf of Leo Berwick and Leo Berwick AI, LP. Good afternoon, your Honor.

THE COURT:  Good afternoon.  Welcome everyone.

I have an application for a TRO, and so I plan to hear oral argument on this application, decide whether or not to issue the TRO, schedule a preliminary injunction hearing, and otherwise address a schedule for this matter.  I have read the plaintiff's papers but, of course, want the plaintiff to have an opportunity to address me, and then I will hear from defense counsel.

So, Mr. Savage, what can you tell me?

MR. SAVAGE:  I don't want to connect the law of diminishing returns by repeating too much of what your Honor has read, so I will keep my points short, and if your Honor needs further explanation or discussion, I will be happy to provide it.

The first and, I think, the -- I think they are all inarguable points, but I think the first inarguable point is the return of the laptop.  This is an unconditional obligation

Q51LCueC

that Mr. Reingruber had under his agreement and as requested by Plaintiff when he left.  The suggestion that was made by his counsel -- and I should preface this by saying I have no issue with counsel; this is solely addressed to Mr. Reingruber -- was that he should be allowed to reopen the laptop so he can remove his personal materials.

Now, as we said in our papers on March 19, which was the day after he left, and the company was able to determine, at least to some extent, the scope of the downloading that he had engaged in on his way out the door, they locked the computer remotely to protect their data.  The suggestion that somehow the company should allow Mr. Reingruber to reenter the computer so he can pull documents off it and then return it to us suggests that we would have a level of naivety or gullibility that I think is simply unwarranted.

To the extent that Mr. Reingruber placed personal information on his work computer, that was his call, but he certainly had no expectation of privacy.  We have no interest in retaining or disseminating any of his personal family photos, videos, baseball highlights, or whatever he has on the computer that has nothing to do with the -- his case.  But there are approximately 40,000 files that he downloaded, most of them in the couple of weeks, two-and-a-half weeks before he actually announced his departure, when I think we can safely assume he was engaged in negotiations with the Berwick company

Q51LCueC

to move over there.

We have no idea what happened to those materials.  We need to have a forensic review done of the computer to see -- first of all, to verify that we are correct that it was 40,000 and change, what happened to them, whether there were deletions, whether they were downloaded to a thumb drive, whether they were e-mailed somewhere else, or anything else.  Mr. Reingruber has absolutely no ownership or entitlement to retain the computer, and it should be returned immediately.  And, in fact, at the risk of putting the cart before the horse, I have the name and address and contact information for the forensics firm to which we want the computer mailed, and a chain of custody form that Mr. Reingruber should fill out.  There is no reason that should be delayed any further.  Our client asked for this laptop back on March 19.  It's now getting close onto six weeks.  We still don't have it.  He has no entitlement to retain it.

On the rest of the material, Mr. Reingruber was a six-year employee of Cuesta.  Under Illinois law, which governs his agreement, continued employment is adequate consideration for post-employment restrictions, and the post-employment restrictions here, I think, are very standard and very fair.  One is to maintain confidential information.  We have grave concerns, given his downloading activity, whether he has, in fact, engaged in that.  We certainly don't know, and I think we

are entitled to and need to take discovery from Berwick LP and Berwick AI -- and I will address that issue in a moment -- whether any of those materials are in their files and what information, if any, they have.

We know from the affidavits that we have submitted that there have been approaches to at least one, if not more, Cuesta employee.  To the extent that Mr. Reingruber was directly involved in it, or indirectly, with giving suggestions or help to the Berwick company, we need to know that, and that would clearly constitute a violation of his employment agreement, and specifically Section 6.

He also has a very limited six-month non-compete period, which, again, we submit is fully in keeping with the requirements of Illinois law, inasmuch as it is limited in time and limited to clients of Cuesta from whom he cannot solicit work.  We are not preventing him from going out and earning a living and trying to develop or helping his new company develop clients and customers with whom he did not work or with whom he did not have contact, but this is a very limited and very focused non-compete agreement that we think fully stands up.

On the issue of the defendants, and I do need to address this for a moment because I understand that Mr. Lauriello -- and I appreciate his clarification on this -- is representing Berwick and Berwick AI.  Originally, when I was in touch with Mr. Larson, who I gather is in-house counsel at

Leo Berwick, he said he was representing the LP only. I have attached all the correspondence that I had with adversary counsel in order to be in full disclosure with the Court.

The status of AI is really unclear. Our firm did some research and found that what we thought was Leo Berwick AI had a registered agent for the service of process in Delaware, a company called National Registered Agents. After I served Mr. Larson, the in-house counsel, with the papers this morning, I called National Registered Agents, spoke to them, and got their e-mail address and e-mailed them all the papers. They wrote back to me to say, We don't have any company named Leo Berwick AI for whom we are registered. We checked again and we did, in fact, find that there is a Leo Berwick AI. In fact, I have an e-mail, and I have copies for the Court, which confirmed that this was the proper address.

I then went onto the website which we showed in the -- Mr. Derhake's declaration, which showed leoberwickai.com, and I got back a bounce-back saying there is no such entity. So I don't know, and I would ask if the Court could clarify, whether AI is simply a d/b/a, a brand name of Leo Berwick LP, if it's a separate entity, and if service on Mr. Larson, and now through Mr. Lauriello, is going to be deemed sufficient.

That's all I have to say subject to any questions that your Honor may have.

THE COURT: Thank you.

Q51LCueC

Let me start with you, Mr. Forzano.  And let's focus on that laptop.  So, first of all, did your client remove from Cuesta any -- and I want to broadly construe this -- confidential information and provide it to Leo Berwick or their agents or employees?

MR. FORZANO:  No, your Honor.  My understanding is my client downloaded certain files, as counsel had stated, and as is stated in their papers, while he was still employed by that former company.  That access was then shut off the following day after his resignation.  He hasn't had access to any of that data.  Counsels, on concession, and as conceded in their papers, there is no way he possibly shared that information.  The computer is completely shut down.

THE COURT:  OK.  But before it was shut down, he didn't share the information?

MR. FORZANO:  No.  That's my understanding.  He did not.

THE COURT:  OK.  Good.  So why is the laptop not returned?

MR. FORZANO:  Sure.  So, the concern with the laptop, and as counsel stated earlier, is my client's personal information is on that laptop.  He does have a reasonable expectation of privacy with respect to his personal information that's in that laptop, I would argue, your Honor.

THE COURT:  What kind of personal information?

Q51LCueC

MR. FORZANO:  I'm sorry?

THE COURT:  What kind of personal information?

MR. FORZANO:  Whatever information that he has on there regarding, I think, maybe personal e-mails or information about, maybe, his own finances, or things of that nature.  You know, I think he has a reasonable expectation of privacy in those materials.  So that's his primary concern.

Now, I would point out, your Honor, that the laptop has been placed in Nixon Peabody's possession.  We have control of the laptop.

THE COURT:  Thank you.  I was hoping you would do that.

MR. FORZANO:  Yes.  My client turned over the laptop. Almost immediately after the access was shut off, he turned it over to Nixon Peabody, so we have that in our possession.  I am -- and I believe counsel, sort of, alluded to the fact that he would like this laptop to be provided directly to a third-party independent forensic investigator to do a forensic investigation.  I think that more than covers my client's concerns about his private and personal information that's on that laptop.

I think, you know, as long as -- and that was going to be my recommendation, your Honor, that the laptop be turned over to a third-party independent forensic investigator who can do a forensic investigation.  That person can segregate out

Q51LCueC

whatever is personal, and that won't get disclosed to the company. And I think that's probably the best way to proceed. So, assuming that's what counsel also agrees to, that would be my recommendation, your Honor.

THE COURT: Great. So, Mr. Savage has a proposed order here. He will share it with you. Counsel will negotiate any issues that they may spot. And if there are disputes, I am happy to resolve them. I am going to assume that you are going to work this out, but again, I am available if there are disputes. I will rule on them promptly. And the laptop will be produced to the forensic examiner. Great.

MR. FORZANO: Thank you, your Honor.

THE COURT: Yes. Good. And I will issue a TRO requiring that.

And also, any objection by your client to enforcement of the obligations that he agreed to that are contained in the confidentiality agreement and his employment agreement?

MR. FORZANO: So if I may, you know, discuss that briefly, your Honor. I heard counsel earlier state that, you know, there was at least one employee of which they are aware that there has been solicitation, but I just wanted to draw attention to this because that employee is Danielle Crandall. She is not actually an employee of Cuesta. She is an independent contractor. And furthermore, your Honor, it's my understanding that her name at one point appeared on the

Q51LCueC

website.  It has been removed.  And she has not and will not in any capacity be hired by Leo Berwick or Leo Berwick AI for any projects whatsoever.

THE COURT:  Is there a personal relationship here?  I feel like you are trying to communicate something I may not be getting.

MR. FORZANO:  The point that I was trying to communicate, your Honor, is there is only one employee that they can point to as there being any alleged solicitation whatsoever in violation of the terms of the contract, and I just wanted to make the point that that's not actually true.

Moreover, there is another gentleman that's referenced in the papers, Leonard Kang, and there's some outreach to Mr. Kang from my client.  That's discussed as if this has some sort of, you know -- is some sort of evidence of solicitation of engineers, or things of that nature.  That's also not true.  That's a mischaracterization.  My understanding is there was a general conversation between these two gentlemen about how best to vet an engineer, talking about whether you are using something like behavioral tolls or software, or some other method, right.  It was an innocuous conversation.  There was no solicitation of Mr. Kang or any engineer at Cuesta, for that matter, that was intended or that did occur by virtue of that conversation.

And so I would say, your Honor, if these are the only

Q51LCueC

two things that, you know, that counsel points to, there is no evidence to suggest that there is any specific, you know -- well, certainly, customers -- none of those have been alleged -- but any employees or consultants, or anything like that, that have been solicited by Mr. Reingruber.  So I did want to make that point to your Honor.

THE COURT:  I appreciate that.  So, I am to understand that your client does not believe he has violated the terms of his employment agreement to date, and he does not oppose me entering a temporary restraining order enforcing those terms?

MR. FORZANO:  Well, your Honor, I guess the only other point that I would make is, I don't see that there is any evidence of irreparable harm that would be sufficient to warrant the temporary restraining order, given the fact that he hasn't solicited anyone.

And, actually, while I am there, your Honor, this application in general, it comes six weeks after my client resigned from Cuesta and six weeks after his computer was terminated.  I don't know where the emergency is here.

THE COURT:  So, as I read it -- and that occurred to me when I first glanced at these papers.  A TRO usually comes very quickly.  But as I understand it from the attached correspondence, there's been an attempt to resolve this between the parties without having to come to court, and that's to be commended.  Am I wrong?

Q51LCueC

MR. FORZANO:  I don't think you are wrong, your Honor. I do think part of that correspondence was also to, you know, reiterate our client's position that there's been no solicitation.  There's no evidence of any of that.  The computer has been locked off from access since the day after he resigned more than six weeks ago.

So while I do think that that's a fair way to describe the interaction that's been occurring between counsel, I think if counsel was going -- if there was a real emergency, right, this application would have been made much sooner.  I think there is no emergency because the computer was shut off the day after he resigned.

THE COURT:  Well, I actually don't know what discovery is going to show, and I don't know what happened.  But there is representation in the papers of an extraordinary change in conduct while still employed, with a massive downloading of files that is inconsistent with his prior history of downloading while employed.  That by itself is an enormous red flag and presents a basis to fear great risk to the plaintiff's business.  So, I don't know what happened before the laptop was locked.  I don't know what happened with the downloaded files. I just, you know -- there's no way I can know.

What I am hearing is the company has sensitive information, highly-sensitive information.  Its former employee, Mr. Reingruber, had access to that information, took

Q51LCueC

steps just before he left the company to take into his personal possession massive amounts of confidential information.  Why he would do that, other than to personally benefit in a way that he should not from that material, I do not know.

So, obviously, Leo Berwick has a business.  I bet it has confidentiality agreements for its employees.  I bet it wants its confidential information protected.  I bet everybody wants these laws respecting and enforcing those agreements upheld.  So we are just going to try to work this all out so everybody does what they should do.

MR. FORZANO:  Understood, your Honor.

THE COURT:  Thanks so much.

MR. FORZANO:  Your Honor, may I make one additional point?

THE COURT:  Sure.

MR. FORZANO:  I did just want to touch on this, and I will be brief, your Honor.  I do think, you know, my client has additionally some concerns regarding enforceability of restrictive covenants that are at issue in this litigation, whether it's under New York law or Illinois law.  And just let me point -- the reason I bring up New York law, your Honor -- you know, I am not going to dispute that there is a choice of law provision in the contract, however, you know, the conflict of law principles, you know, dictate that in situations where there is a public policy that would be undercut by the choice

Q51LCueC

of law, that New York law would apply in those situations.  I think that's present here, and for one main reason.  I believe that there's a public policy in this state, which is, you can't have broad prevention of former employees, you know, being employed in their chosen field.  And I do think that that's an issue with the restrictive covenant in this case.  I do think it is broader than counsel articulated earlier.

THE COURT:  The six-month non-compete?

MR. FORZANO:  Yes.

THE COURT:  Are you talking about the length?

MR. FORZANO:  I am talking about a few things, your Honor.  Let me, I guess, first talk about the client solicitation provision.

THE COURT:  Current clients?

MR. FORZANO:  So, the way that "clients" is actually defined is broader than that.  It includes entities that are not and may never end up being clients, future clients, prospective clients -- it's not just current clients of Cuesta -- as well as entities to which presentations were made after my client resigned from that company.  So these are things over which he has no control.  These are clients with which he had no substantial relationship.  I don't think there is a legitimate business interest to be protected in preventing any sort of contact from my client --

THE COURT:  Let me see if I can quickly put my hands

Q51LCueC

on the --

MR. SAVAGE:  It's paragraph 5 of Exhibit 1 to Mr. Derhake's declaration.

(Pause)

THE COURT:  So, the definition of "Client," which is on the top of page 4, has three components.  And I don't understand you have any objection with respect to the restriction as to the first component.  Do you?

MR. FORZANO:  That's correct.

THE COURT:  So, the other two components addressed prospective customers.  One prospective customer is a company to which the plaintiff company had made a business presentation during the 12 months prior to Mr. Reingruber's separation from the plaintiff.

Do you have an objection there?

MR. FORZANO:  My objection, your Honor, would be to the extent that my client has had no substantive work or connection or dealings with any of these prospective clients. You know, I have concerns that the covenant is overbroad as to that.

THE COURT:  OK.  So, with respect to the third part of the definition, this is a prospective customer for which the -- Mr. Reingruber was participating in an effort to get that customer's business.  Do you have an objection there?

MR. FORZANO:  No.  I think if he substantially worked

Q51LCueC

with that client, that would be a different story.

THE COURT:  OK.  So your objection is to the breadth of the second definition?

MR. FORZANO:  That's correct, your Honor.  I have some additional objections, if I may, interposed in there.

One of them, your Honor, is just -- and that's it with respect to the client --

THE COURT:  So --

MR. FORZANO:  -- solicitation.

I'm sorry.  Go ahead, your Honor.

THE COURT:  I am just trying to understand.  This is a six-month bar.

MR. FORZANO:  All prospective customers, whether or not my client had any connection with them whatsoever while he was employed by Cuesta.  That portion of it, your Honor, I believe is overbroad.

THE COURT:  For six months?

MR. FORZANO:  Yes.  So, I will also point out that, notwithstanding that it's for a short period of time -- I agree that six months is not a long period of time -- there is no geographical limitation either.  So for six months, he essentially can't do this anywhere.

THE COURT:  I assume the plaintiff has a national, if not an international focus on its business, given the description of its business.  I don't know, but I assume that

Q51LCueC

your client hopes to have a national, if not international focus on his business too.  And Leo Berwick -- isn't this a small, highly-skilled space in which you don't have a geographic restriction in your plans and operations?

MR. FORZANO:  So, your Honor, I would actually say that my client is not really a unique or extraordinary type of person, and what he does is not unique or extraordinary.  He is a tech consultant, and the way that this --

THE COURT:  But that's the business -- that's the nature of the business, isn't it?

MR. FORZANO:  Right.  And this agreement prevents any type of -- prevents my client from engaging in any services of any type rendered by the company.  I also think that's very broad.

THE COURT:  For six months.

MR. FORZANO:  Yes.  It effectively prevents him from being employed in his chosen field for a period of six months. I do think there's public policy in the state of New York against that.

THE COURT:  I understand.  And Illinois' laws is more flexible.  But I don't think there is a per se bar, even in New York, with respect to a six-month restriction.

Do you have a case you wanted me to look at?

MR. FORZANO:  I do not have a case handy, your Honor.

THE COURT:  OK.  You wanted to raise another legal

Q51LCueC

issue?

MR. FORZANO: Certainly. With respect to the employee solicitation provision, I would just point out to your Honor that that applies to consultants as well, which is independent contractors. I am not sure how my client is supposed to know who those individuals are. I also don't understand how there would be a legitimate business interest in preventing independent contractors from working with whomever they wish.

THE COURT: So, what is your client's role to be with his new employer?

MR. FORZANO: He is a general technology consultant.

THE COURT: And so he has no role in business development whatsoever?

MR. FORZANO: I am not aware of that, your Honor. I am not saying that he doesn't. I don't know one way or the other.

THE COURT: And how many individuals at Leo Berwick will function in the same or similar role that your client will have there?

MR. FORZANO: I don't know the answer to that question, your Honor.

THE COURT: So, these are all important points, OK.

MR. FORZANO: I agree, your Honor.

THE COURT: And I will certainly hear counsel further on them, but right now I don't see that there is a basis,

Q51LCueC

certainly under Illinois law, or even New York law, to define that this is an unlawfully restrictive non-compete.

If you wanted me to look at the -- I would have to have a better description from you of why this non-solicitation description in paragraph 6 is overbroad.  I would have to have a better understanding of what his role is and how it's going to confine him in functioning.  Basically, I am going to enforce a six-month non-compete here.

MR. FORZANO:  OK.  Understood.  Your Honor, thank you.

THE COURT:  Good.

MR. FORZANO:  I don't have anything further, your Honor.

THE COURT:  OK.  So, Mr. Lauriello, what can you tell me?

MR. LAURIELLO:  Well, your Honor, first I will start with the service issue.  And my apologies, I just joined this matter hours ago, so --

THE COURT:  My special thanks for your presence here. Thank you.

MR. LAURIELLO:  My service issues notwithstanding, both Leo Berwick LP and Leo Berwick AI, LP have both been served, so I don't think there are any service issues for us to discuss.  That being said, we are not conceding, of course, that the entities are correct.  My understanding is Mr. Reingruber is not an employee of Leo Berwick and, you know,

Q51LCueC

I reserve future briefing regarding a motion to dismiss potentially for them being the wrong entity entirely.

To the extent the order to show cause or the potential order has asked for a restriction on my clients regarding confidential Cuesta information, my understanding is that no Cuesta confidential information is in the possession of either Leo Berwick entity.  So to the extent that the order as applies to my client simply says they can't use that confidential information, we wouldn't oppose because that would simply be the status quo.

THE COURT:  Very helpful.  Very helpful.

MR. LAURIELLO:  The only other parts of the order that I think would apply to my clients would be any request for expedited discovery, especially in the TRO itself.  We would oppose any expedited discovery, especially in a TRO.  We don't see why it needs to be ordered today.  We haven't had an opportunity to respond.  As I said before, it is very likely a motion to dismiss on one or both of my clients.  So we would oppose any discovery.  At a minimum, to the extent expedited discovery is sought, we would want a full opportunity to brief that issue.

THE COURT:  So, this is the situation.  And, counsel, you have been so helpful.  Thank you.

I am going to issue a TRO, which means that there is going to be a need for a preliminary injunction hearing.  And I

Q51LCueC

am going to assume that counsel are going to want an opportunity to take discovery of each other in advance of that hearing. I would like to talk about what you actually need so it can be core targeted discovery and not overly burdensome.

We are going to try to set a hearing schedule. We are going to set a hearing schedule, but let me tell you normally the steps, and then we will talk about the timing. There will be some document discovery. There will be some deposition discovery, again, hopefully narrow and targeted and non-burdensome as possible. Then this will be a non-jury proceeding, so you will follow my individual practices with respect to non-jury proceedings.

The direct testimony of the hearing witnesses will be presented to me by affidavit. You will give with those affidavits a memorandum of law. You will have findings of fact and conclusions of law. I will prepare a draft opinion with findings of fact and conclusions of law. We will have a hearing. At the hearing, the plaintiff will call their witnesses. They will be sworn to the truth of their affidavits. They will be tendered for cross. Then each of the defendants will do the same thing. They will call their witnesses. They will be sworn. Their affidavits, sworn affidavits, will be tendered as their direct testimony, and then there will be cross-examination. You will sum up.

There won't be post-hearing briefing. I will use what

Q51LCueC

I got before the hearing, mark up my draft findings of fact and conclusions of law based on what I have heard at the hearing. The hearing should be a half day or a day at most. The issues here are narrow and targeted.

So, I am required by law to give you a hearing in two weeks, which is a lot of work to do in two weeks. So, you know, with your consent I would propose having a hearing in early June, probably the week of June 8. And you get me your papers early June. And so we would spend May with you doing these other tasks. And, of course, the defendant would have a right to answer or move to dismiss since they have been served within the next three weeks. And I would also plan to discuss with you whether or not we can send you to a mediator and hopefully resolve all of this short of a hearing.

So, what I am going to suggest is I leave the bench for a few minutes, you talk with each other about a schedule, about what discovery you actually need, the core discovery, whose deposition, if anyone, you need. And, you know, to me, obviously, Mr. Reingruber needs to be deposed. I am not sure anyone else does. But, you know, you have a right to talk about that with each other and identify others, if you believe there are others that need to be deposed. And I would hope we could just do one deposition a party at most during this period.

So, any objection to a brief interval here for you to

Q51LCueC

have these discussions and see if you can reach agreement?

MR. SAVAGE:  None at all.  I think that would be helpful.

And I would just like the record to show that I am going to hand to both Mr. Forzano and Mr. Lauriello the chain of custody form and the mailing instructions for the laptop so that whatever date or deadline your Honor imposes for the return of the laptop, they have that information and can move that quickly.

THE COURT:  Good.  Thank you all.  Let Mr. Whertvine know when you are ready to resume.

(Recess)

THE COURT:  Counsel, please be seated.

Have you reached agreement on a schedule?

MR. SAVAGE:  Your Honor, here is what we would like to propose.  And Mr. Forzano and Mr. Lauriello and I had a good conversation, and I appreciate the fact that they have been in this case for at least an hour and a half, and I have been in that situation myself.

What we would like to propose is as follows:  We recognize that the clients are not here.  The attorneys in charge of the case on the defense side are not here.  What we propose to do is to have a meet-and-confer among the three of us on Monday at 2:00 o'clock, go over the issues, go over timing.  Our plan is to have a joint letter to your Honor by

Q51LCueC

noon on Wednesday to go over what we have been able to decide, or, if there are issues on which we need the Court to make a call, we can do that.  I don't think we can be any more definitive at this point, but we had a good conversation, and I think we have rough outlines of some of what we need to do.

THE COURT:  Good.  So, I am going to issue a temporary restraining order along the lines that I discussed.  And, indeed, I will read into the record the terms of it in a moment.  I am also going to give you a preliminary injunction hearing date because it's important that I get you on my calendar to protect your rights to be heard.

Mr. Whertvine, would you give us a day the week of June 8.

MR. SAVAGE:  Judge, if I can request that it not be June 9, I would appreciate that; June 8 or 9.  But any other day of the week is fine, at least on my end.

THE DEPUTY CLERK:  June 11 at 10:00 a.m.

THE COURT:  If this general schedule works for you, then what I would like is your papers to me no later than June 3.

MR. SAVAGE:  Understood.

THE COURT:  So that would give you, essentially, May for discovery and preparation of your written submissions, give me about a week to work with your submissions, and then we would have the hearing on June 11.  Of course, you have the

Q51LCueC

right to request a hearing within 14 days. That's fine too. But I am hoping that your conversations next week will work with this kind of schedule.

And, of course, one issue you should talk about is whether or not you agree to consolidate the trial on the merits with the preliminary injunction hearing, and that we just do this all, this entire litigation in a month. That may be very much in your clients' interest as well.

I would also like you to talk about a schedule for mediation to the extent that you can't resolve this next week on your own. I think I should send you to mediation the week of May 18. And please discuss that and whether that's the right schedule for you. It gives you a couple of weeks to try to resolve this without any assistance, but then another week in order to, hopefully, resolve it with assistance.

So, let me describe the temporary restraining order I am about to issue.

MR. SAVAGE: One question, Judge. On the mediation, would that be from the Southern District mediation panel or would that be in front of Magistrate Judge Tarnofsky?

THE COURT: Well, I think your magistrate judge is not Magistrate Judge Tarnofsky. Let me just check.

MR. SAVAGE: That showed up on the ECF this morning.

THE COURT: OK. Thank you.

MR. SAVAGE: And I am not arguing for one or the

Q51LCueC

other.  I am just curious what the Court's thinking was on it.

THE COURT:  Thank you for finding that.  The name doesn't come up on the form I have.  I am sure it will with another printout.

I can check if she has availability that soon.  I can't guarantee that she will, but I know I can get a mediator that soon.  So one of the things you should discuss next week is whether you prefer to have it before the magistrate judge, and I would be happy to check with her and see if she has availability.  OK?

MR. SAVAGE:  Understood.

THE COURT:  Good.

MR. LAURIELLO:  Your Honor, one more quick question. I believe you said all papers due June 3.  Is your Honor envisioning all parties would just submit one round of briefing before the preliminary injunction hearing, or would it be tiered in terms of responses?

THE COURT:  If you wanted to make a response, I would probably say June 8, but it would just be a memorandum.  You know, all the evidence comes in on June 3, including any findings of fact and conclusions of law or memorandum of law. If you wanted to submit a rebuttal memorandum, if something occurred that was unexpected, I would suggest June 8.

MR. LAURIELLO:  Thank you, your Honor.

THE COURT:  Good.  But, again, you will work with

Q51LCueC

these dates in your conference next week.

So, pending our preliminary injunction hearing, I am going to order that the defendants or any person or entity acting in concert with them or under their supervision (1) are temporarily restrained and enjoined from possessing, using, disclosing, or disseminating Cuesta's confidential information; (2) are required to immediately return all of Cuesta's confidential information in their possession; and separately, that defendant Reingruber is temporarily restrained and enjoined from violating his employee confidentiality agreement, including the six-month non-compete provision, and two, that he shall return his Cuesta-issued laptop to Cuesta no later than May 4, 2026.  And, of course, if I have a proposed order for it to be submitted to a forensic expert for review in satisfaction of that requirement, I am happy to consider that as well.

MR. SAVAGE:  I have -- and if I can approach, I can provide the Court with the name and address of the person to whom it should go.

THE COURT:  OK.

MR. SAVAGE:  And just one question.  Your Honor stated that Mr. Reingruber is barred from violating his non-compete. Does that also include the non-solicitation which appears in paragraph 6 of his employee agreement?

THE COURT:  Well, I noticed that's a 12-month non-solicitation.

Q51LCueC

MR. SAVAGE:  Yes.

THE COURT:  And that's -- so, I am not going to address the length of that right now.  I am just going to order him -- he is enjoined from violating his agreement as a whole, and that includes the non-compete provision.  I understand the non-solicitation provision is within the agreement, so he is barred, pending the preliminary injunction hearing, from any solicitation.

MR. SAVAGE:  If I may approach with the information about the forensic computer person.

THE COURT:  Sure.

MR. SAVAGE:  I will hand this up to the clerk.

THE COURT:  Thank you.

MR. SAVAGE:  Thank you, your Honor.

THE COURT:  And the forensic expert is iDiscovery Solutions, Inc., to the attention of Mike Perelman.

Is there any objection to this particular expert?

MR. FORZANO:  There is not, your Honor.

May I ask for one clarification from your Honor, please?

THE COURT:  Sure.

MR. FORZANO:  You mentioned earlier that Mr. Reingruber must return his laptop by May 4, 2026.  Is that the laptop must be turned over to this forensic expert on that date, or we have to mail it out by that date?  Because it may

Q51LCueC

take -- it's already 5:00 o'clock, your Honor, on Friday.

MR. SAVAGE:  Your Honor, we would be satisfied if it goes out by Federal Express on May 4, to arrive with Mr. Perelman on May 5, which is how I wrote the order to show cause.

MR. FORZANO:  That should be fine, your Honor.  Thank you.

THE COURT:  So, Mr. Savage, is there anything further we need to do?

MR. SAVAGE:  Not at this point, your Honor.  I appreciate the Court taking us as promptly as it did.

THE COURT:  Thank you.

Mr. Forzano, anything else?

MR. FORZANO:  Nothing further, your Honor.  Thank you for your time.

THE COURT:  Thank you.

Mr. Lauriello, anything else?

MR. LAURIELLO:  No, your Honor.  Thank you for your time.

THE COURT:  Yes.  Good luck with your clients.  Appreciate it.

(Adjourned)