UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CUESTA PARTNERS LLC,<br><br>Plaintiff,<br><br>-v-<br><br>JAMIE REINGRUBER, et al.,<br><br>Defendants. | 26cv3602 (DLC)<br><br>OPINION AND ORDER |

APPEARANCES:

For Plaintiff Cuesta Partners LLC:
Eric A. Savage
Sara Elgndy
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022

For Defendant Jamie Reingruber:
Tina B. Solis
Paul Fitzgerald Downs
Nixon Peabody LLP
55 West 46th Street
New York, NY 10036

For Defendants Leo Berwick LP and Leo Berwick AI, LP:
Peter Andrew Stokes
Anthony Lauriello
Kelly Potter
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019

DENISE COTE, District Judge:

In March of 2026, Jamie Reingruber resigned from Cuesta Partners LLC ("Cuesta") after downloading a massive amount of its files. He had accepted an employment offer from Leo Berwick

AI, LP ("Berwick AI"), a Cuesta competitor. On May 1, 2026, a temporary restraining order was issued against Reingruber, Berwick AI, and its affiliate Leo Berwick LP ("Berwick"). This Opinion contains the findings of fact and conclusions of law following a preliminary injunction hearing held on July 1. At that hearing, the defendants Reingruber, Berwick AI, and Berwick were enjoined from possessing and using confidential information regarding Cuesta and its clients, and from otherwise violating or inducing violations of Reingruber's employment agreement with Cuesta.

## Findings of Fact

Cuesta was founded in 2019 as a data, AI, and IT diligence firm, working with private equity and corporate clients on technology, data, and AI strategy. Its principal place of business is in Chicago, Illinois. It currently has six partners, twelve individuals holding the title of principal, and over one hundred other employees.

Reingruber was Cuesta's first hire. He was hired in 2020 as a senior associate and by August of 2021 was promoted to manager. On or about the time of that promotion, Reingruber executed an Employee Confidentiality, Non-Compete and Non-Solicitation Agreement with Cuesta Partners (the "Agreement"), which bears an effective date of August 6, 2021.

Among other commitments, the Agreement bars Reingruber from "disclos[ing] . . . or remov[ing] from the premises of the Company . . . any Confidential Information," "both during and after the term of this Agreement" in a provision entitled "Non-Disclosure of Confidential Information." It also requires Reingruber to "return" any confidential information in his possession upon Company request. In another provision entitled "Return of Company Property," the Agreement requires Reingruber to "return to the Company all Company property including . . . computers [and] Confidential Information" upon termination of his employment. It also bars him from "procur[ing]" or "copy[ing]" any Company property, including its confidential information, "in anticipation of . . . termination of his employment."

The Agreement contains two restrictive covenants that Cuesta seeks to enforce through this litigation. First, the Agreement bars Reingruber from, "for a period of six months . . . following termination of . . . employment," "render[ing] to or for any Client any services of the type rendered by the Company." It defines "Client" in three categories, as follows:

- (i) any customer of the Company that had project work in process or pending with the Company on the date of

Employee's termination of employment or in the twelve (12) months prior to the Employee's termination,

- (ii) any prospective customer of the Company to which the Company had made a business presentation during the twelve (12) months immediately prior to the Employee's date of termination, or
- (iii) any prospective customer of the Company to which the Company makes a business presentation during the six (6) months after the Employee's date of termination where Employee participated in such initial business discussions prior to the date of termination.

The second restrictive covenant bars Reingruber from, "for a period of twelve (12) months after [termination]," "soliciting any employee, consultant, officer or director of the Company . . . for employment, consulting or other services," "soliciting or interfering with any Client," and soliciting "any Client using Confidential Information."

Reingruber was promoted to senior manager in January of 2023 and in May of 2023 received the Cuesta Employee Handbook, which includes additional confidentiality provisions. Reingruber was then promoted to principal in July 2024. At about that time he became a Co-Lead of the Technology Strategy Practice. As Co-Lead, Reingruber defined the practice's

strategy, go-to-market approach, delivery methodology, asset investment plans, and human capital needs, and had access to virtually all of Cuesta's confidential information and trade secrets. Reingruber's total 2025 compensation consisted of a $225,000 salary and a $64,174 bonus.

During 2025, Cuesta engaged in conversations with other entities about being acquired. In anticipation of its acquisition, Cuesta and Reingruber entered into a Transaction Bonus Agreement on January 30, 2025, which entitled him to a bonus in the event of "(i) a sale of all or substantially all the assets or ownership interests of the Company or (ii) a recapitalization of the Company" (i.e., a "Transaction"). The Transaction Bonus Agreement required Reingruber to be "employed in good standing" by Cuesta through the closing of the transaction in order for the bonus to be paid out. The agreement also specified that 50% of any bonus would be paid to Reingruber at the time the transaction closed and the remaining 50% would be paid upon the one-year anniversary of the closing.

Cuesta was ultimately acquired by Riveron in February 2026. Before that occurred, however, Nick Kato, Berwick's Chief Operating Officer, approached Cuesta about a possible acquisition. Those discussions ended at some point in the Fall of 2025. In late 2025, the predecessor of Berwick AI was formed

under the name Tenon Point, LP. It became Leo Berwick AI in early 2026. Omar Khalifa is the Chief Executive Officer of Berwick AI, and together with Kato, solicited Reingruber to join Berwick AI.

Berwick and Berwick AI began to recruit Reingruber in December of 2025. During telephone conversations in the following weeks,[1] Khalifa and representatives from Berwick explained their business plans for what became Berwick AI and informed Reingruber that they were well funded. They inquired in general terms about what Reingruber did for Cuesta and whether he was, in his view, adequately compensated for his work. They inquired about what kind of work he did for clients, how he would develop clients for their new business, how individual projects should be staffed, and how projects for clients should be priced. They also told Reingruber that it would be "critical" for him "to help [them] identify other members of [his] team that need to come along and be part of this," ideally 5-10 individuals. They offered Reingruber a

[1] Cuesta provided AI-generated transcripts of these conversations. These transcripts were produced by a company named Otter.AI after Reingruber personally purchased Otter.AI's software to record the phone conversations and generate the transcripts. The defendants have objected that the transcripts are unauthenticated and may not be accurate, although Reingruber acknowledged that he still has access to recordings of these conversations and has not compared the transcripts to them.

$500,000 signing bonus, which they noted would, in essence, be "commensurate" with the transaction bonus to which he would be entitled from Cuesta if he remained "employed in good standing." Reingruber noted that he could not violate his one-year restrictive covenant agreement with Cuesta.

Cuesta sent Reingruber a draft employment agreement on February 6, 2026 that contained a two-year non-solicitation restrictive covenant, and extended him a formal offer of employment on February 12. On February 16, Reingruber sent Khalifa a copy of his Cuesta Agreement.

In emails dated February 25 and 27, Reingruber gave Berwick AI thoughts on how to pitch AI services to new clients. In the February 25 email, Reingruber gave Berwick AI pitch advice based on the conversations he was having as a Cuesta principal with private-equity clients to which Riveron introduced him. In the February 27 email, he provided statistics on the average revenues and duration of Cuesta's data and AI projects. Reingruber also attached a pitch slide he drafted for Berwick AI describing its services and the business outcomes that prospective clients would enjoy. At the time he drafted and edited these pitch materials for Berwick AI, Reingruber was still employed at Cuesta. He did not tell anyone at Cuesta that

he was giving Berwick AI sales advice or drafting marketing materials for them.

On February 28, Reingruber explained to Berwick and Berwick AI that he expected to receive his transaction bonus from the Riveron acquisition of Cuesta in mid-March and would discuss his exit with Cuesta leadership after that payment was made. Reingruber expressed concern that Cuesta may pursue litigation against him related to the restrictive covenants in his Agreement, however, and sought assurance that Berwick AI would cover any potential legal defense.

On March 6, Reingruber received his final employment offer from Berwick AI. The offer packet contained several documents, one of which was a "Restrictive Covenant Agreement" containing various covenants that run for one year following the last day of employment but could recommence, should there be a violation of any restriction, upon that violation's remediation. The one-year restrictive covenants included non-disclosure of confidential information, non-compete, and non-solicitation provisions. The agreement also required Reingruber to return all information belonging to Berwick AI, including confidential information, to Berwick AI at the termination of his employment.

Between March 7 and 11, the five days after he received this final employment offer from Berwick AI, Reingruber

downloaded 40,562 Cuesta files onto his laptop. On the weekend of March 7-8 alone, he downloaded nearly 35,000 files: 11,000 files while in a coffee shop on Saturday, March 7 and almost 24,000 additional files on Sunday, March 8. Reingruber then downloaded a final 5,500 files between Tuesday, March 10 and Wednesday, March 11. In comparison, he downloaded only 1,312 files between November 6, 2025 and February 24, 2026. The files he downloaded in March after receiving his offer package included complete client files with the clients' bank statements and tax returns, employee reviews, contact information, deliverables, marketing and business development strategy, and individualized pricing schedules. The downloaded documents also included documents and templates created by Cuesta to help it sell its projects and perform its work, and Reingruber confirmed that the documents would be similarly helpful to Berwick AI. Reingruber did not have the necessary permissions to download these company documents directly from the Cuesta SharePoint drive, so he downloaded a product to act as a "workaround" to the permissions.[2]

[2] Reingruber testified that he downloaded these 40,000 files as part of a Cuesta project for Riley Scott, one of the firm's co-founders. This explanation was not credible for many reasons, including the timing of the downloads, his use of a workaround to bypass Cuesta SharePoint permissions, and his admissions that he did not tell anyone at Cuesta about the downloads, he did not ask anyone at Cuesta or Cuesta's external technology vendor for

In addition to downloading these files onto his Cuesta-issued laptop, Reingruber also copied the files onto at least one external USB drive. Cuesta did not have access to this USB drive or know of its existence.[3] The downloaded files were also backed up to Reingruber's personal iCloud storage drive, and he confirmed at the July 1, 2026 hearing that "some or all of the materials that [he] downloaded are still accessible through [his] iCloud account."

On Friday, March 13, Reingruber informed Thomas Derhake, the managing partner of Cuesta, that he was considering leaving. The following Tuesday, March 17, he explained that he was thinking of joining Berwick. On Wednesday, March 18, Reingruber sent an email to Derhake and two others, explaining that he was "going to try something different." He praised them as mentors, for taking a chance on him even though he had "limited industry expertise," and for all they had taught him. On March 19, Cuesta provided Reingruber with a prepaid FedEx label with

---

assistance with the download permissions or workaround, and he did not utilize any Cuesta-provided AI tools to assist with the downloads or project.

[3] Reingruber claims that he copied all of the files on his Cuesta-issued laptop -- including the 40,000 files recently downloaded from Cuesta's SharePoint -- onto an external USB drive because the laptop also contained "personal files" that he wished to retain. He acknowledged that he "should have" conducted a "more targeted extraction" of the personal files alone and did not explain why he did not do so.

directions to return his company laptop. Reingruber did not do so.

Almost immediately, Cuesta became privy to the "unusual" download activity by Reingruber. On March 19, in the afternoon, it remotely locked Reingruber's company laptop and blocked its access to the company's systems. Cuesta's attorneys attempted in the following weeks to obtain the laptop and otherwise resolve the matter. They were unable to do so. Instead, after retaining counsel, Reingruber gave the laptop and external USB drive to his counsel.

## **Procedural History**

On April 30, Cuesta filed this action and sought a TRO. At a conference with the parties on May 1, the TRO was granted. It enjoined Reingruber from violating the Agreement, and all defendants from possessing, using, disclosing, or disseminating Cuesta's confidential information. It also required Reingruber to mail his Cuesta-issued laptop to a specific forensic investigator and all defendants to immediately return all of Cuesta's confidential information in their possession, if any.[4]

---

[4] Reingruber testified that, after the issuance of the TRO, the defendants decided "it would be in [Reingruber's] best interest" not to engage in any recruiting efforts for Berwick AI and, as a result, did not receive a one-time $400,000 "recruitment bonus" from Berwick AI for hiring a specified number of other employees within 3 months of his start date.

On May 15 and 16, the defendants filed motions to dismiss. In response, Cuesta filed a First Amended Complaint ("FAC") on June 8. The defendants have renewed their motions to dismiss, which will be fully submitted on July 31.

Following unsuccessful attempts to mediate their dispute, the parties filed submissions in support of or opposing a preliminary injunction on June 17. On June 22, the defendants filed additional declarations in opposition to the motion for a preliminary injunction. The plaintiff's submission included a declaration from one witness: Thomas Derhake, Partner at Cuesta. Defendants' submissions included declarations from five witnesses: Jamie Reingruber, defendant and Partner at Berwick AI; Tina Solis, counsel for Reingruber; Kelly Potter, counsel for Berwick and Berwick AI; Nicholas Kato, managing partner at Berwick; and Omar Khalifa, managing partner and sole beneficial owner of Berwick AI. Each declaration was received as constituting the direct testimony of the witness.

At the July 1 preliminary injunction hearing, the plaintiff cross-examined Reingruber and the defendants cross-examined Derhake. The parties waived their right to cross-examine the other declarants. During summations, all defendants stated that they were willing to consent to an order barring them from accessing or using the illegally downloaded files, and requiring

Reingruber to return his Cuesta-issued laptop. Defendants Berwick and Berwick AI also confirmed that they have no "intent of inducing or facilitating violations" of Reingruber's Agreement with Cuesta. At the conclusion of the hearing, the Court advised the parties that it planned to enter a preliminary injunction and publish an Opinion detailing its reasoning.

## Conclusions of Law

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 79 (2d Cir. 2024) (citation omitted). The movant must show:

> (1) irreparable harm;
>
> (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and
>
> (3) that a preliminary injunction is in the public interest.

Id. (citation omitted).

I. Likelihood of Success on the Merits

Although Cuesta brings six claims in the FAC, this Opinion addresses only the first two claims: a claim for breach of contract against Reingruber and a claim for tortious interference with a contract against Berwick and Berwick AI. The third claim for misappropriation of trade secrets under the

Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., against all defendants -- the only federal claim in the matter -- will be addressed when resolving the motion to dismiss that will be fully submitted on July 31. The remaining three state-law claims are derivative of the breach of contract claim.

A. Breach of Contract

Cuesta first contends that Reingruber violated many provisions of the Agreement, including provisions regarding the non-disclosure of confidential information at ¶ 1.2, the non-solicitation of Cuesta's customers and employees at ¶ 6, and the return of Cuesta property after termination at ¶ 8. The parties agree that Illinois law applies to this breach of contract claim, per the Agreement's choice-of-law provision at ¶ 11. To succeed on its breach of contract claim against Reingruber under Illinois law, Cuesta must demonstrate "(1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by [the] defendant, and (4) resultant injury to the plaintiff." Zahdan v. Frontline Business Enterprise Inc., 241 N.E.3d 1040, 1049-50 (Ill. App. Ct. 1st Dist. 2024).

Cuesta has demonstrated that it is likely to succeed on its claim that Reingruber breached the Agreement. It has offered evidence that, in the days before he resigned, Reingruber

downloaded to his Cuesta-issued laptop highly sensitive and confidential documents from Cuesta's clients that were stored on Cuesta's servers, in addition to documents embodying Cuesta's work for those clients and its business practices that were proprietary and highly confidential. It is undisputed that Reingruber violated the "return of company property" provision when he failed to return his Company laptop and the "business documents" and "Confidential Information" it contained upon his termination. Cuesta is also likely to succeed on its claim that Reingruber violated the Agreement's "non-disclosure of confidential information" provision, which bars him from "copy[ing]," "reproduc[ing]," or "remov[ing] from the premises of the Company" any of Cuesta's confidential information, when he downloaded over 40,000 files in the five days after he received his final offer package from Berwick AI, a week prior to his resignation. At a minimum, those downloads violated the provision's bar from copying and reproducing confidential information. Further, Reingruber's downloads, coupled with his failure to return his Company laptop (on which the documents were downloaded) upon his termination, also violated the provision's requirements that he not "copy" confidential information "in anticipation of" his termination or "remove" confidential information "from the premises of the Company."

Reingruber's arguments to the contrary are not persuasive. As previewed above, he does not dispute -- and, thus, concedes -- that he breached the Agreement's "return of company property" provision. As for the non-disclosure provision, he argues that Cuesta has not shown a likelihood of success on the merits for two reasons. Both are unpersuasive.

First, he contends that the provision is unenforceable because its definition of "confidential information" is "facially overbroad" and "necessarily encompasses virtually any and all information related to Cuesta or its business." The definition, however, indicates otherwise. It notes that the term "Confidential Information" "shall not include any of the foregoing items which have become publicly known and made generally available through no wrongful act." It also limits the inclusion of "any and all other confidential or proprietary information and data" to that which "should reasonably have been understood to be proprietary and confidential." As a result, neither of the two opinions Reingruber relies upon, in which courts applying Illinois law invalidated confidentiality provisions as overbroad, apply here. See Dressander v. Simplicity Fin. Marketing, Inc., No. 19cv1395, 2023 WL 2561733, at *12 (N.D. Ill. Mar. 17, 2023) (invalidating confidentiality provisions that "reach a broad scope of information and are not

cabined by any temporal . . . restriction[]"); AssuredPartners, Inc. v. Schmitt, 44 N.E.3d 463, 475 (Ill. App. Ct. 1st Dist. 2015) (invalidating a provision that prohibited the "use of any information he obtained or any observations he made while he worked for [the employer]" (emphasis in original)).

Reingruber next argues that Cuesta "cannot identify any resulting injury or damages" from a breach of the non-disclosure provision because "[t]he only theoretical breach by Reingruber relates to his delay in returning the laptop and deleting the data" and, now, "the laptop and two USB Drives have been returned." This argument, too, fails. Cuesta has shown that Reingruber schemed over a period of weeks to violate his contractual and fiduciary obligations to Cuesta and its clients, that he used stealth and deceit to do so, and that when his theft of confidential information was discovered, he did not promptly return the misappropriated files. He still retains those illegally acquired files in his iCloud account. The risk to Cuesta and its clients remains ongoing.

Lastly, Reingruber argues that Cuesta has not shown a likelihood of success on its breach of contract claim because it has not presented evidence that Reingruber breached the Agreement's non-compete and non-solicitation provisions. In particular, Reingruber argues that the non-compete and non-

solicitation provisions are unenforceable because they are overbroad -- and, even if they were enforceable, that Cuesta did not demonstrate that Reingruber violated them. This argument also fails. It is unnecessary for Cuesta to show that Reingruber violated every provision of the Agreement to demonstrate a likelihood of success on the merits of its breach of contract claim. As already explained, this Court finds that Cuesta has shown such a likelihood of success with regards to at least two provisions, the "non-disclosure of confidential information" provision and the "return of company property" provision. That is sufficient for the issuance of a preliminary injunction.

In any event, Reingruber's unenforceability argument is unpersuasive. The Illinois Supreme Court "has a long tradition of upholding covenants not to compete in employment contracts involving the performance of professional services when the limitations as to time and territory are not unreasonable." Reliable Fire Equip. Co. v. Arredondo, 965 N.E.2d 393, 398 (Ill. 2011) (citation omitted).

B. Tortious Interference with a Contract

Cuesta next claims that Berwick and Berwick AI induced Reingruber to breach the non-disclosure and non-compete provisions at ¶ 1.2 and ¶ 5 of the Agreement and benefitted from

those breaches. "To state a claim for tortious interference with contract, a plaintiff must allege facts sufficient to establish: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." Webb v. Frawley, 906 F.3d 569, 577 (7th Cir. 2018) (citing Illinois law). In short, a tortious interference with contract claim "requires the plaintiff to prove that the defendant induced a third party to breach a contract." McCoy v. Iberdrola Renewables, Inc., 760 F.3d 674, 685 (7th Cir. 2014) (citing Illinois law).

Cuesta has not met its burden to prove that it is likely to succeed on the merits of this claim. It has not shown that Reingruber shared any of the downloaded files with Berwick or Berwick AI, or that either entity encouraged him to engage in the downloading. It has also not shown that Berwick or Berwick AI intentionally induced Reingruber to violate his non-disclosure or non-compete covenants. Although Cuesta cites AI-generated transcripts of various calls between Reingruber and Berwick executives, in most of those conversations, the Berwick executives asked Reingruber to describe in general terms how he would approach various business issues. Nor has Cuesta shown

that any of the more specific requests followed February 16, when Reingruber supplied Berwick and Berwick AI with a copy of his Cuesta Agreement and the restrictive covenants it contained.

II. Remaining Preliminary Injunction Factors

As explained above, a plaintiff seeking a preliminary injunction must show, in addition to a likelihood of success on the merits, that "irreparable harm" is likely to occur in the absence of an injunction and that such an injunction "is in the public interest." State Farm, 120 F.4th at 79. Cuesta does so.

As the Second Circuit has explained:

> [T]o satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied [with an award of money damages] if a court waits until the end of trial to resolve the harm.

Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). The Second Circuit has found irreparable harm when information "of great value" is disclosed, such as trade secrets or other information covered under a confidentiality agreement, because that loss "cannot be measured in money damages." FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir. 1984). The Second Circuit has also found irreparable harm where a defendant's actions would cause the plaintiff "loss of reputation, good will, and business

opportunities" because it would be "impossible to estimate with any precision the amount of monetary loss which has resulted and which would result in the future from the loss of [plaintiff]'s relationships with customers." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004); see also Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68-69 (2d Cir. 1999) (similarly finding irreparable harm where "it would be very difficult to calculate monetary damages" resulting from "the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"). In addition, the Circuit has found support for irreparable harm in breach-of-contract cases where defendants have acknowledged, in their contracts, that "a breach of the confidentiality clause would cause 'irreparable injury' to [plaintiffs]." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir. 1999); see also Ticor Title, 173 F.3d at 68-69 (noting that the defendant's acknowledgment in the contract that plaintiff "shall be entitled to injunctive relief" in the event of a breach because such a breach would cause irreparable injury "might arguably be viewed as an admission by [the defendant]").

Here, Cuesta has shown that it will suffer irreparable harm in the absence of an injunction due to the disclosure of its and its clients' confidential information. As described above, the

documents that Reingruber illegally downloaded include Cuesta's individualized pricing schedules by client, other marketing and business development strategy files, and client financial information and tax returns. The financial and reputational harm resulting from the disclosure of Cuesta and its clients' sensitive and confidential information to an individual who works for a direct competitor cannot be quantified. And, like the defendants in Haber and Ticor Title, Reingruber signed an Agreement in which he "acknowledges and agrees that . . . irreparable injury will be suffered by [Cuesta] should [Reingruber] breach any of those provisions" because such a breach "cannot be adequately compensated by monetary damages." His argument now that no irreparable harm has occurred fails.

Cuesta has also shown that a preliminary injunction requiring Reingruber to comply with the provisions of the Agreement would be in the public interest. There is undoubtedly a public interest in enforcing valid employment agreements, including any reasonable restrictive covenants they may contain. Defendants' arguments otherwise, that enforcement of the Agreement would harm the public interest by hindering Reingruber's ability to "carry on his trade or profession" after leaving Cuesta and discouraging "competition for both employees

and customers," are not persuasive. The Agreement's covenants are appropriately restricted in time and scope, and sufficiently precise to provide Reingruber and his new employer the guidance they need to comply with the Agreement's terms. Reingruber took wrongful possession of the confidential information not just of Cuesta but also of its clients. The success and stability of Cuesta's business depends on its ability to keep all of that sensitive information confidential. Berwick's own agreements with Reingruber contain restrictive covenants and impose a duty of confidentiality on him. This is unsurprising and wholly defeats the defendants' public-interest arguments against the enforcement of Cuesta's covenants.

Lastly, defendants contend that the balance of the equities counsel against issuing a preliminary injunction here because such relief would bar Reingruber from recruiting additional people to join Berwick AI and has already prevented him from receiving a $400,000 recruitment bonus. This argument fails for at least two reasons. First, it is undisputed that the recruitment bonus was a one-time, time-limited offer that has since expired. Even if the issuance of a preliminary injunction would have such an effect, the offer is no longer available. Second, the non-solicitation provision does not bar Reingruber from recruiting anyone to join Berwick AI, only those

individuals who are Cuesta "employee[s], consultant[s], officer[s] or director[s]." And the Berwick executives were aware of the terms of Reingruber's Agreement with Cuesta, including its various restrictive covenants, at the time they extended Reingruber an employment offer.

**Conclusion**

Cuesta's April 30 motion for a preliminary injunction is granted in part.

Dated: New York, New York
July 8, 2026

Denise Cote
DENISE COTE
United States District Judge